# UNITED STATES DISTRICT COURT
## DISTRICT OF MAINE

ADAM JEWELL,                              )
                                         )
                   Plaintiff,            )
                                         )
v.                                       )   Docket No. 1:11-cv-195-GZS
                                         )
LINCARE, INC.,                           )
                                         )
                                         )
                   Defendant.            )

## ORDER ON PARTIAL MOTION TO DISMISS

Before the Court is Defendant's Partial Motion to Dismiss (Docket # 7) Count I (False Claims Act Retaliation) of Plaintiff's Complaint.  As explained herein, the Court DENIES the Motion.

### I.   LEGAL STANDARD

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim for relief that is plausible on its face.'"  Ashcroft v. Iqbal, — U.S. — , 129 S. Ct. 1937, 1949 (2009) (quoting Bell Atlantic v. Twombly, 550 U.S. 544, 570 (2007)).  In considering the merits of a motion to dismiss, the Court must accept as true all well-pleaded factual allegations in the complaint and draw all reasonable inferences in Plaintiff's favor. Gargano v. Liberty Intern. Underwriters, Inc., 572 F.3d 45, 48 (1st Cir. 2009).  The Court must examine the factual content of the complaint and determine whether those facts support a reasonable inference "that the defendant is liable for the misconduct alleged."  Iqbal, 129 S. Ct. at 1949.  While a complaint "need not include evidentiary detail, it must nonetheless allege a factual predicate concrete enough to warrant further proceedings."  U.S. ex rel. Karvelas v. Melrose-Wakefield Hosp., 360 F.3d 220, 240 (1st Cir. 2004), abrogated on other grounds by

Allison Engine Co., Inc. v. U.S. ex rel. Sanders, 553 U.S. 662 (2008).  Moreover, the Court need not accept "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements."  Iqbal, 129 S. Ct. at 1949.

## II.   FACTUAL BACKGROUND

Plaintiff Adam Jewell was employed by Defendant Lincare, Inc. as a Service Technician from October 2008 through November 16, 2009.  (Compl. (Docket #1) ¶ 17.)  Jewell and other Service Technicians were supervised by Senior Service Technician David MacKenzie.  (Id. ¶ 19.)  While working for Lincare, Jewell observed unsigned client paperwork in MacKenzie's possession that surreptitiously acquired client signatures.  (Id. at ¶ 20.)  According to Jewell, this paperwork did not leave MacKenzie's office and no client came to the office to sign it.  (Id. ¶ 20.)  Based on these observations, Jewell inferred that MacKenzie was forging client signatures on client paperwork.  (Id.)  Jewell also observed MacKenzie obtain signatures from clients and then backdate the paperwork to comply with due dates for the relevant documents.  (Id. ¶ 21.)  These documents—backdated and containing forged client signatures—were submitted to Medicare and Mainecare (Medicaid) in connection with Lincare's requests for reimbursement for equipment and services.  (Id. ¶ 22.)

Jewell reported to his Manager, Doug McGraw, that MacKenzie was forging signatures and backdating documents.  (Id. ¶ 29.)  Instead of stopping MacKenzie from continuing to forge client signatures and backdate documents, which were submitted to the government for reimbursement, McGraw told MacKenzie that Jewell had reported this conduct.  (Id. ¶ 30-32.)  After learning that Jewell had told McGraw about his forging signatures and backdating documents, MacKenzie began yelling at Jewell, calling Jewell names and making fun of Jewell.  (Id. ¶ 33, 34.)  On one occasion, MacKenzie threw a heavy regulator at Jewell, which missed

him.  (Id. ¶ 35, 36.)  Jewell reported MacKenzie's behavior to McGraw, but McGraw failed to respond and MacKenzie's disrespectful behavior continued.  (Id. ¶ 38, 39.)  In October 2009, Jewell again reported to McGraw that MacKenzie was continuing to forge client signatures and backdate documents.  (Id. ¶ 40.)  During this conversation McGraw told Jewell that he had confronted MacKenzie about Jewell's allegations and warned MacKenzie against forging client signatures and backdating documents in the future.  (Id. ¶ 42.)  McGraw also told Jewell that he did not want to know about any forging of signatures or backdating of documents and that the whole office would be shut down and all employees would lose their jobs if word got out.  (Id. ¶ 44, 45.)

On November 16, 2009, Jewell was called into a meeting with McGraw and MacKenzie and was told that he was being terminated due to failure to complete his Hazardous Material ("Haz Mat") paperwork for the last day he had worked.  Id. ¶ 48, 49.  Jewell in fact had completed his Haz Mat paperwork.  Id. ¶ 50.  Jewell alleges he was terminated because he had reported to McGraw that MacKenzie had forged client signatures and backdated documents.  Id. ¶ 51, 52, 55-59.

On May 12, 2011, Jewell filed the pending suit against his former employer, Lincare, Inc., alleging violations of the federal False Claims Act (FCA), 31 U.S.C. § 3730(h) (Count I), and the Maine Human Rights Act, 5 M.R.S.A. § 4551 et seq., and the Maine Whistleblowers' Protection Act, 26 M.R.S.A. § 831 et seq. (Count II).

## III.   DISCUSSION

Defendant moves to dismiss only Count I of the Complaint, which alleges that Defendant violated the FCA by engaging in a retaliatory termination of Plaintiff.

3

Section 3730(h) of the FCA "protect[s] employees who pursue, investigate, or contribute to an action exposing fraud against the government." Karvelas, 360 F.3d at 235. This section provides:

> Any employee … shall be entitled to all relief necessary to make that employee … whole, if that employee … is discharged … because of lawful acts done by the employee … in furtherance of an action under this section or other efforts to stop 1 or more violations of this subchapter.

31 U.S.C. § 3730(h)(1). To establish a prima facie claim for retaliatory termination under the FCA, therefore, a plaintiff must show that (1) he engaged in "protected conduct," (2) the employer knew that the employee was engaged in such conduct and (3) the employee was discharged "because of" that protected conduct. See Karvelas, 360 F.3d at 235. Defendant contends that Plaintiff's Complaint does not state a claim with respect to any of the prongs.

In the First Circuit, the term "protected conduct" is interpreted broadly to include:

> activities that reasonably could lead to an FCA action[,] in other words, investigations, inquiries, testimonies or other activities that concern the employer's knowing submission of false or fraudulent claims for payment to the government.

Id. at 236-37 (internal quotation omitted). A plaintiff, however, need not have known that his actions could lead to a suit under the FCA, or even that the False Claims Act existed, in order to demonstrate that he engaged in protected conduct. Id. at 237.

Here, Defendant asserts that Plaintiff failed to allege sufficient facts to state that he engaged in "protected conduct" because Plaintiff's Complaint alleges only that his supervisor forged and backdated unspecified documents. These bare bones allegations, Defendant argues, amount to nothing more than an internal complaint about regulatory violations and incorrectly completed paperwork. Plaintiff fails to state a claim, Defendant argues, because Plaintiff never reported to his supervisor about fraudulent billing practices. In other words, Plaintiff never

reported internally that the government was billed for items that were not delivered or for which Defendant overcharged.

Plaintiff, on the other hand, argues that the definition of protected conduct in <u>Karvelas</u> is sufficiently broad to encompass the allegations contained in his Complaint.  Under Plaintiff's reading of <u>Karvelas</u>, a plaintiff can state a claim for retaliation under the FCA without alleging that his internal report specifically mentioned fraudulent billing practices.  In particular, Plaintiff argues that his investigation and inquiry into the submission of backdated documents and/or documents with forged client signatures to Medicare and Mainecare for reimbursement reasonably could lead to an FCA suit and, therefore, his conduct in investigating and inquiring about such actions meets the standard for protected conduct.   Accordingly, Jewell's investigation, inquiry and associated activities were not related only to inappropriate documentation and failure to meet regulatory standards but also concerned conduct "that reasonably could lead to an FCA action." <u>Id.</u> at 237.

At the motion to dismiss stage of the pleadings, Plaintiff has the better argument.  The definition of "protected conduct" set forth in <u>Karvelas</u> is broad and objective, <u>see, e.g.</u>, <u>Karvelas</u>, 360 F.3d at 236; <u>U.S. ex rel. Gobble v. Forest Labs., Inc.</u>, 729 F. Supp. 2d 446, 450 (D. Mass. 2010), and can be read to incorporate Jewell's allegations.  To state a claim that he engaged in "protected conduct," Plaintiff's Complaint must allege that he engaged in "investigations, inquiries, testimonials or other activities that concern the employer's knowing submission of false or fraudulent claims for payment to the government."  <u>Karvelas</u>, 360 F.3d at 237.  Jewell has met that standard.  Jewell alleges that he observed and then reported to his supervisor MacKenzie's backdating and forging client signatures on documents, which were later submitted to Medicare and Mainecare for reimbursement.  As Defendant readily concedes, Jewell need not

have specifically reported a "fraud on the government" to his supervisor. Under Karvelas, it is sufficient that Jewell's internal report to McGraw "concern[ed]" Lincare's fraudulent billing practices – i.e. backdating and forging client signatures on documents that were submitted to the government for reimbursement.[1]  See id.  Accordingly, Plaintiff's allegations set forth a plausible claim that he engaged in protected conduct.

Next, Plaintiff must satisfy the knowledge prong of the Karvelas standard, which requires that the employer knew the employee was engaged in protected conduct.  See id. at 235, 239. Defendant argues that because Plaintiff's conduct was not protected, Defendant could not have known about any protected activity.  Plaintiff, on the other hand, argues that because Plaintiff informed his supervisor of his protected conduct, Defendant was on notice that Plaintiff had engaged in protected conduct.  At this stage in the proceedings, the Court finds that Plaintiff sufficiently alleged that Lincare, and McGraw specifically, knew of Jewell's reports of forged and backdated documents and knew those documents were eventually submitted to the government for reimbursement.

Finally, in order to state a claim for retaliation, a plaintiff "must also allege that he was terminated *because* of his protected conduct."  See id. at 239 (emphasis in original).  Defendant argues that Plaintiff inadequately pled causation because he relied solely on conclusory allegations of causation unsupported by any facts.  Meanwhile, Plaintiff argues that the timing of his firing and its proximity to his protected conduct is sufficient to infer that Plaintiff was fired

---

[1] Defendant's attempts to characterize Plaintiff's conduct as merely complaints about Defendant's inappropriate documentation and failure to meet regulatory standards fall short.  The failures Plaintiff reported internally, and alleged in his Complaint, are directly tied to the submission of claims to the government for reimbursement. Therefore, Plaintiff's investigations and inquiries "concern" Defendant's "knowing submission of false or fraudulent claims for payment to the government." Karvelas, 360 F.3d at 237.  Moreover, in arguing that Plaintiff's internal complaint must have specifically alleged fraud on the government in order to cross the threshold into protected activity, Defendant misapprehends the rule in Karvelas, which does not require that a plaintiff's complaint allege that he complained internally about a fraud on the government.  The standard set forth in Karvelas only requires that Plaintiff's investigative activities concern the Defendant's fraudulent billing practices.  See id.

for retaliatory reasons.  Plaintiff has the better argument.  Plaintiff's Complaint alleges that he was terminated on the pretext that he had not completed his Haz Mat paperwork when, in fact, Plaintiff had completed the paperwork and submitted it to his supervisor.  Additionally, Plaintiff alleges that he was fired soon after making his protected conduct known to his supervisor. Accordingly, Plaintiff's allegations constitute a sufficient basis to conclude that Jewell was fired because of the protected conduct.  His retaliatory termination claim, therefore, survives.

## IV.    CONCLUSION

For the foregoing reasons, the Court ORDERS that Defendant's Partial Motion to Dismiss (Docket # 7) is hereby DENIED.


SO ORDERED.

/s/ George Z. Singal
United States District Judge

Dated this 15th day of September, 2011.